**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

```
--------------------------------------------------- x
MICHAEL K. CARBONE,                                 :
on behalf of plaintiff and a class,                 :
                                                    :
                    Plaintiff,                      :
                                                    :
         vs.                                        :
                                                    :
CALIBER HOME LOANS, INC.; and                       :
U.S. BANK TRUST, N.A., as Trustee of                :
LSF9 MASTER PARTICIPATION TRUST;                    :
                                                    :
                    Defendants.                     :
--------------------------------------------------- x
```

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT   N.Y.

★   AUG 20 2015   ★

LONG ISLAND OFFICE

CV  15  4919

SEYBERT, J

LINDSAY, M

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Michael K. Carbone brings this action to secure redress from unlawful credit and collection practices engaged in by defendants Caliber Home Loans, Inc. ("Caliber"), and U.S. Bank Trust, N.A., as Trustee of LSF9 Master Participation Trust ("LSF9").

2.     Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") and implementing Regulation Z, 12 C.F.R. part 1026.

### VENUE AND JURISDICTION

3.     This Court has jurisdiction under 15 U.S.C. §§1640 (TILA) and 1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

4.     Venue and personal jurisdiction in this District are proper because:

    a.     This action concerns real property within the District;

    b.     Defendants' communications and notices were received by plaintiff within this District;

    c.     Each defendant does or transacts business within this District and claims an interest in loans alleged owed by persons in this District and secured by

1

real property in this District.

## PARTIES

5.      Plaintiff Michael K. Carbone is an individual who resides in a single-family home which he owns in Nassau County, New York.

6.      Defendant Caliber is a Delaware corporation with offices at 3701 Regent Blvd., Suite 200, Irving, Texas.  It does business in New York.  Its registered agent and office is CT Corporation System, 111 8th Ave., New York, New York  10011.

7.      Caliber is a "special servicer" of residential mortgage loans and seeks rating as such from rating agencies such as Fitch and S&P in order to obtain "special servicing" business.  Caliber advertises its ratings on its web site.

8.      In mortgage industry jargon, a "special servicer" is a servicer that specializes in handling delinquent and defaulted mortgage loans.

9.      According to S&P's rating opinion, Caliber serviced $32 billion in residential loans as of Aug. 31, 2013.   As of June 20, 2013, when the total balance was less, it was servicing over 92,000 loans.

10.      Caliber regular acquires servicing of loans that are delinquent or in default at the time of such acquisition.  On information and belief, it has over 4500 such loans.

11.      Caliber acquires servicing of portfolios or groups of similar loans, rather than individual loans.

12.      Caliber uses the mails and telephone system to collect such debts.

13.      Caliber is a debt collector as defined in 15 U.S.C.  §1692a(6).

14.      Defendant U.S. Bank Trust, N.A., is a federally-chartered corporation with offices at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19809, and  111 SW Fifth Ave., Portland, Oregon 97204.  It is trustee of a securitization trust,  LSF9 Master Participation Trust.  U.S. Bank Trust, N.A., as trustee of the trust is hereinafter referred to as "LSF9".

15.     On information and belief, Caliber acted as agent for LSF9 in connection with the matters complained of herein, and is the party who actually performed the acts attributed to such defendant.

## FACTS

16.     Plaintiff has a residential mortgage loan owned by LSF9 and serviced by Caliber. The loan is secured by plaintiff's residence and was obtained for personal, family or household purposes, namely housing.

17.     LSF9 acquired the loan and Caliber obtained its servicing in late 2014. Attached as Exhibit A is the notice of transfer of servicing, dated November 10, 2014.

18.     At the time, the loan was delinquent.

19.     On or about November 17, 2014, Caliber sent plaintiff the document attached as Exhibit B.

20.     Exhibit B is a form document, filled out in a standardized manner.

21.     Exhibit B purports to be the "notice of debt" required by 15 U.S.C. §1692g.

22.     Exhibit B is the only document Caliber sent plaintiff for the purpose of attempting to comply with 15 U.S.C. §1692g.

23.     Exhibit B states, "If you dispute the debt, please contact us in writing to the above referenced address . . . ."

24.     Exhibit B represents that a dispute must be in writing.

25.     On or about December 20, 2014, Caliber, on behalf of LSF9, sent plaintiff the notice attached as Exhibit C.

26.     Exhibit C is a notice of interest rate and payment change.

27.     Exhibit C states both that the rate will increase from 5.0% to 7.990% and that "Your rate can change at each adjustment by no more than 01.000%."

28.     Exhibit C is a form document, filled out in a standardized manner.

29.     The note and mortgage (Exhibits D-E) provide for a limit on rate changes to 1%.

3

## COUNT I – FDCPA – CLASS CLAIM

30.     Plaintiff incorporates paragraphs 1-29.

31.     This claim is against Caliber.

32.     The requirement that a dispute be in writing does not comply with 15 U.S.C.

§1692g, and the also violates 15 U.S.C.  §1692e.

33.     Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer**

4

requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability.  The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings.  A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

34.    Section 1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2)     The false representation of--

(A)     the character, amount, or legal status of any debt; . . .

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## CLASS ALLEGATIONS

35.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ.P. 23(a) and (b)(3).

36.    The class consists of (a) all natural persons (b) whose correspondence address, according to the records of Caliber,  is the same as the property address, (c) which property contains one or two dwelling units (including condominium and cooperative apartments),  (d) to whom Caliber sent a letter purporting to contain §1692g disclosures (e) in the form represented by Exhibit B (e) on or after a date one year prior to the filing of this action, and (f) on or before a

5

date 21 days after the filing of this action.

37.     On information and belief, based on the size of defendants' operations and the use of form documents,  the class exceeds 40, and is so numerous that joinder of all members is not practicable.

38.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B complies with 15 U.S.C.  §1692g and is confusing in violation of 15 U.S.C.  §1692e.

39.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

40.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

41.     A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a.     Individual cases are not economically feasible.

    b.     Many debtors may not realize that their rights are violated.

    c.     Congress intended class actions as a principal means of enforcing the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendant for:

    i.     A declaration that defendant's communication violates the FDCPA;

    ii.     Statutory damages;

    iii.     Attorney's fees, litigation expenses and costs of suit;

    iv.     Such other or further relief as the Court deems proper.

## COUNT II – TRUTH IN LENDING ACT – CLASS CLAIM

42.   Plaintiff incorporates paragraphs 1-29.

43.   This claim is against defendant LSF9.

44.   Exhibit C is internally inconsistent and violates Regulation Z, 12 C.F.R. §1026.20.

45.   Section 1026.20 provides:

. . .(c) Rate adjustments with a corresponding change in payment. The creditor, assignee, or servicer of an adjustable-rate mortgage shall provide consumers with disclosures, as described in this paragraph (c), in connection with the adjustment of interest rates pursuant to the loan contract that results in a corresponding adjustment to the payment. To the extent that other provisions of this subpart C govern the disclosures required by this paragraph (c), those provisions apply to assignees and servicers as well as to creditors. The disclosures required by this paragraph (c) also shall be provided for an interest rate adjustment resulting from the conversion of an adjustable-rate mortgage to a fixed-rate transaction, if that interest rate adjustment results in a corresponding payment change.

(1) Coverage—(i) In general. For purposes of this paragraph (c), an adjustable-rate mortgage or "ARM" is a closed-end consumer credit transaction secured by the consumer's principal dwelling in which the annual percentage rate may increase after consummation. . . .

(2) Timing and content. Except as otherwise provided in paragraph (c)(2) of this section, the disclosures required by this paragraph (c) shall be provided to consumers at least 60, but no more than 120, days before the first payment at the adjusted level is due. The disclosures shall be provided to consumers at least 25, but no more than 120, days before the first payment at the adjusted level is due for ARMs with uniformly scheduled interest rate adjustments occurring every 60 days or more frequently and for ARMs originated prior to January 10, 2015 in which the loan contract requires the adjusted interest rate and payment to be calculated based on the index figure available as of a date that is less than 45 days prior to the adjustment date. The disclosures shall be provided to consumers as soon as practicable, but not less than 25 days before the first payment at the adjusted level is due, for the first adjustment to an ARM if it occurs within 60 days of consummation and the new interest rate disclosed at consummation pursuant to §1026.20(d) was an estimate. The disclosures required by this paragraph (c) shall include:

(i) A statement providing:

(A) An explanation that under the terms of the consumer's adjustable-rate mortgage, the specific time period in which the current interest rate has been in effect is ending and the interest rate and mortgage payment will change;

(B) The effective date of the interest rate adjustment and when

7

additional future interest rate adjustments are scheduled to occur; and

(C) Any other changes to loan terms, features, or options taking effect on the same date as the interest rate adjustment, such as the expiration of interest-only or payment-option features.

(ii) A table containing the following information:

(A) The current and new interest rates;

(B) The current and new payments and the date the first new payment is due; and

(C) For interest-only or negatively-amortizing payments, the amount of the current and new payment allocated to principal, interest, and taxes and insurance in escrow, as applicable. The current payment allocation disclosed shall be the payment allocation for the last payment prior to the date of the disclosure. The new payment allocation disclosed shall be the expected payment allocation for the first payment for which the new interest rate will apply.

(iii) An explanation of how the interest rate is determined, including:

(A) The specific index or formula used in making interest rate adjustments and a source of information about the index or formula; and

(B) The type and amount of any adjustment to the index, including any margin and an explanation that the margin is the addition of a certain number of percentage points to the index, and any application of previously foregone interest rate increases from past interest rate adjustments.

(iv) Any limits on the interest rate or payment increases at each interest rate adjustment and over the life of the loan, as applicable, including the extent to which such limits result in the creditor, assignee, or servicer foregoing any increase in the interest rate and the earliest date that such foregone interest rate increases may apply to future interest rate adjustments, subject to those limits.

(v) An explanation of how the new payment is determined, including:

(A) The index or formula used;

(B) Any adjustment to the index or formula, such as the addition of a margin or the application of any previously foregone interest rate increases from past interest rate adjustments;

8

**(C) The loan balance expected on the date of the interest rate adjustment; and**

**(D) The length of the remaining loan term expected on the date of the interest rate adjustment and any change in the term of the loan caused by the adjustment.**

**(vi) If applicable, a statement that the new payment will not be allocated to pay loan principal and will not reduce the loan balance. If the new payment will result in negative amortization, a statement that the new payment will not be allocated to pay loan principal and will pay only part of the loan interest, thereby adding to the balance of the loan. If the new payment will result in negative amortization as a result of the interest rate adjustment, the statement shall set forth the payment required to amortize fully the remaining balance at the new interest rate over the remainder of the loan term.**

**(vii) The circumstances under which any prepayment penalty, as defined in §1026.32(b)(6)(i), may be imposed, such as when paying the loan in full or selling or refinancing the principal dwelling; the time period during which such a penalty may be imposed; and a statement that the consumer may contact the servicer for additional information, including the maximum amount of the penalty.**

**(3) Format. (i) The disclosures required by this paragraph (c) shall be provided in the form of a table and in the same order as, and with headings and format substantially similar to, forms H-4(D)(1) and (2) in appendix H to this part; and**

**(ii) The disclosures required by paragraph (c)(2)(ii) of this section shall be in the form of a table located within the table described in paragraph (c)(3)(i) of this section. These disclosures shall appear in the same order as, and with headings and format substantially similar to, the table inside the larger table in forms H-4(D)(1) and (2) in appendix H to this part. . . .**

## CLASS ALLEGATIONS

46.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

47.     The class consists of (a) all persons (b) whose address for correspondence purposes, according to the records of Caliber, is the same as the address of the property, (c) which property contains one or two dwelling units (including condominium and cooperative apartments), (d) who were sent a notice of rate change specifying a rate change inconsistent with the "rate limits" disclosed, (e) which notice was sent on or after a date one year prior to the filing

of this action.

48.    On information and belief, based on the size of defendants' operations, and the use of form documents, the class exceeds 40, and is so numerous that joinder of all members is not practicable.

49.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendants failed to provide a clear, conspicuous and consistent notice of rate change.

50.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

51.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

52.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights;

    c.    Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

    i.    A declaration that defendant's notice violates Regulation Z;

    ii.    Statutory damages;

    iii.    Attorney's fees, litigation expenses and costs of suit;

    iv.    Such other and further relief as the Court deems proper.

Abraham Kleinman

KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@akleinmanllc.com


_____
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
     & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

Abraham Kleinman

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY 11556-0626
(516) 522-2621
(888) 522-1692 (fax)
akleinman@akleinmanllc.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

Abraham Kleinman

REDACTED

**<u>EXHIBIT A</u>**



FOR RETURN SERVICE ONLY
PO BOX 619063
DALLAS TX 75063-9063



REDACTED

4-759-60054-0004504-001-1-000-010-000-000

MICHAEL K CARBONE
3388 MAPLEWOOD DR S
WANTAGH NY 11793-3425

November 10, 2014

**WELCOME TO CALIBER!**

Caliber Account Number ████2212
Prior Servicer Account Number ████5792
Re: Property Located at 3388 MAPLEWOOD DRIVE
SOUTH
WANTAGH NY 11793-3425

**\* \* \* IMPORTANT INFORMATION REGARDING THE SERVICING OF YOUR MORTGAGE LOAN \* \* \***

Dear Borrower(s)

Welcome to Caliber Home Loans, Inc! On November 1, 2014, the servicing of your mortgage loan transferred from HSBC MORTGAGE SERVICES INC to Caliber Home Loans Inc  Enclosed is important information required by law to be provided to you relating to your account and the transfer of the servicing of your mortgage loan

**The transfer of servicing of your mortgage loan to Caliber will not affect any term or condition of your mortgage.** However if you have any optional insurance products such as life or disability insurance, those products will not transfer

**To register for automatic payments (ACH) and electronic statements:** All payments due on or after November 1, 2014 should be sent to Caliber Home Loans, Inc. If your monthly payments to HSBC MORTGAGE SERVICES INC were automatically withdrawn from your bank account, that service has been discontinued and automatic payments must be reestablished with Caliber  To start automatic payments to Caliber or to receive electronic statements, visit us at www CaliberHomeLoans com and click the "Sign Up" link on the top right corner of the home page  Once you register, log in to manage your account settings  Please note that initial ACH processing may take up to 30 calendar days

**To make payments by mail:** Please send your check or money order to the following address

Caliber Home Loans, Inc
P O  Box 650856
Dallas, TX 75265-0856

**To contact Caliber**  if you have any questions, please visit www CaliberHomeLoans.com and click on "Contact Us" at the top right corner of the home page  You may also call   We look forward to servicing your loan and providing you with excellent service

Sincerely,

*Martha Ellis*

Martha Ellis, Senior Vice President
Caliber Home Loans, Inc

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge  If you are a debtor presently subject to a proceeding in Bankruptcy Court  or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations

## TEMPORARY PAYMENT COUPON

Checks and money orders should be payable to Caliber Home Loans, Inc

Payments should be mailed to

Caliber Home Loans, Inc
P.O  Box 650856
Dallas, TX 75265-0856

Caliber Account Number ████6212
Prior Servicer Account Number ████5792

REDACTED

**<u>EXHIBIT B</u>**

Jun 17 15 04:45p    Michael K Carbone _____ 15164090350 _____ p.3



CALIBER
HOME LOANS

FOR RETURN SERVICE ONLY
P.O. Box 619063
Dallas, TX 75261-9063

REDACTED

November 17, 2014



7-769-8018*-0002755-001-1-000-000-000-000

MICHAEL K CARBONE
3388 MAPLEWOOD DR S
WANTAGH NY 11793-3425

Account Number:       ████8212
Property address: 3388 MAPLEWOOD DRIVE SOUTH
                  WANTAGH NY

Dear Michael K Carbone:

Caliber Home Loans, Inc recently acquired the servicing of your mortgage loan. In connection with this servicing transfer, Caliber is required to provide you with certain information regarding the outstanding debt on your mortgage loan account.

As of 11/15/2014, our records indicate that LSF9 MASTER PARTICIPATION TRUST is the creditor of your loan and the total debt is: $526,435.10.

| | | |
|---|---|---|
| Principal Balance | $ | 431,450.30 |
| Accrued Interest through 11/15/2014: | $ | 65,504.80 |
| Fees / Costs*: | $ | 29,480.20 |
| Escrow / Unapplied* | $ | 0.00 |
| Total Debt**: | $ | 526,435.10 |

We are not requesting that you pay the entire loan balance and this is not a payoff statement. If you wish to pay off the entire amount of the loan, please contact us for a payoff statement because that balance may differ because of interest, late charges, servicing fees and other charges. A charge for the statement may apply as permitted by state law.

You have thirty (30) days upon receipt of this letter to dispute the validity of the debt or any part of it. If you do not dispute it within that period, we will assume that the debt is valid. If you dispute the debt, please contact us in writing to the above referenced address, and we will mail to you or your authorized representative verification of the debt. Verification of the debt will include all documents signed by you concerning the debt, a payment history of the debt which includes the dates and amount of payments, credits, balances and charges concerning the debt, the name and address of the original creditor, and a copy of any judgment against you regarding the debt. If, within thirty (30) days after the date you receive this letter, you request in writing the name and address of your original creditor, we will furnish you with that information. Please send written requests to: Caliber Home Loans, Inc., P.O. Box 24610, Oklahoma City, OK 73124-0610.

If you need additional information, please call us at 1-800-570-6768 or visit our website at www.CaliberHomeLoans.com

Sincerely,

Martha Ellis

Martha Ellis, Senior Vice President
Caliber Home Loans, Inc.          Mon. - Thurs. 9 AM to 8 PM, Fri. 9 AM to 7 PM Central Time

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

* Fees and costs incurred in connection may include the following amounts, may not be one of servicing fees and costs, and attorney's fees or costs incurred after, are authorized by law or by the contract between you and your original creditor.

** Because of interest, late charges, and other charges, that may vary from day to day, the balance of the total debt on the day you make a payment and when your payment is received, above, an adjustment may need to be made to any amount due. For this reason, we may send you a request. We will inform you of actual amount to be deposited any check for collection. For further information, write us or call 1-800-570-6768.

4.52/DV

REDACTED

**EXHIBIT C**

Jun 17 15 04:45p    Michael K Carbone         15164080350         p.4



## CALIBER
### HOME LOANS

PO Box 24610
Oklahoma City, OK 73124-0610

REDACTED

December 20, 2014

MICHAEL K CARBONE
3388 MAPLEWOOD DRIVE SOUTH
WANTAGH NY 11793-3425

Re: Caliber Account Number ████6212

### Changes to Your Mortgage Interest Rate and Payments on February 1, 2015.

Under the terms of your Adjustable-Rate Mortgage (ARM), you had a 036 month period during which your interest rate stayed the same, with all subsequent interest rate changes occurring every 006 months thereafter. The next adjustment date is on January 1, 2015, so on that date your interest rate and mortgage payment change. After that, your interest rate may change every 006 months for the rest of your loan term.

|  | Current Rate and Monthly Payment | New Rate and Monthly Payment |
|---|---|---|
| Interest Rate | 5.000% | 7.990% |
| Total Monthly Payment | $2,608.64 | $3,401.35 (Due February 1, 2015) |

**Interest Rate:** We calculated your interest rate by taking a published "index rate" and adding a certain number of percentage points, called the "margin." Under your loan agreement, your index rate is .326% and your margin is 3.760%. The 6-MONTH LIBOR is published Daily in the WALL STREET JOURNAL. Your change amount was rounded by .125%.

**Rate Limit(s):** Your rate cannot go higher than 14.990% over the life of the loan. Your rate can change at each adjustment by no more than 01.000%.

**New Interest Rate and Monthly Payment:** The table above shows your new interest rate and new monthly payment. Your new payment is based on the 6-MONTH LIBOR index, your margin, 3.760%, your loan balance of $416,791.51, and your remaining loan term of 255 months

**Prepayment Penalty:** None

Should you have further questions, please feel free to contact our Customer Service Department at 1-800-401-6587. 8:00 a.m. to 6:00 p.m. Central Time, Monday through Friday

Sincerely.

3057                                   20140718/cv                                   1



Special Loans Department
Caliber Home Loans, Inc.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge:  If you are a debtor presently subject to a proceeding in Bankruptcy Court, of is you have previously been discharged from this debt be a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

REDACTED

**EXHIBIT D**

Generated by TallPDF.NET Evaluation

REDACTED

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In The Wall Street Journal) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

March 23, 2006                  Overland Park                  Kansas
    [Date]                          [City]                      [State]

3388 Maplewood Drive South , Wantagh, NY 11793
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 464,000.00                  (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Capital One Home Loans, LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      7.9900      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on      May 1, 2006      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      April 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 403589, Atlanta, GA 30384-3589
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,401.43                  . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

██████7291                              ██████7291

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP®-836N (0210)   MW 10/02 01       Form 3520 1/01
VMP MORTGAGE FORMS (800)521-7291
Page 1 of 4       Initials

Click here to unlock TallPDF.NET

REDACTED

Generated by TallPDF.NET Evaluation

**4   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates
The interest rate I will pay may change on the first day of          April, 2009          , and on that day every 6th     month thereafter  Each date on which my interest rate could change is called a "Change Date "

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in The Wall Street Journal  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

(C) Calculation of Changes
Before each Change Date the Note Holder will calculate my new interest rate by adding Three and Nineteen / Twenty Fifths                           percentage points (          3.7600         %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%)  Subject to the limits stated in Section 4(D) below  this rounded amount will be my new interest rate until the next Change Date
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than          16.9900         % or less than         7.9900         %  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One                           percentage point(s) (         1.0000         %) from the rate of interest I have been paying for the preceding          6          months  My interest rate will never be greater than          14.9900         %

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**5   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment"  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest rate increase

**6   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit  and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

7291                          7291

458N (0513)                          Page 2 of 4                          Form 3520

Click here to unlock TallPDF.NET

REDACTED

Generated by TallPDF.NET Evaluation

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

▓▓7291                           ▓▓7291                           0

▓▓-83BN (0210)                   Page 3 of 4                      Form 3520 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Michael K. Carbone _____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

[Sign Original Only]

7291

7291

0

-830N (0210)

Page 4 of 4

Form 3520 1/01

Click here to unlock TallPDF.NET

REDACTED



(Page 6 of 6)
Generated by TallPDF.NET Evaluation

Loan # ●●●●●●291

ALLONGE TO NOTE

FOR VALUABLE CONSIDERATION, the undersigned hereby endorses to
Pay to the order of

without recourse
all of his/her rights, title and interest in and to the attached Note dated
March 23, 2006                    in the amount of $  464,000.00          The
Borrower(s) in said Note are:
      Michael K. Carbone

Said Note is secured by a Mortgage/Deed of Trust of the same date on real property
located at:
      3388 Maplewood Drive South  .Wantagh,NY 11/93

Signed without recourse by

Capital One Home Loans, LLC

Robert A. Maher

Executive Vice President

REDACTED

**EXHIBIT E**

Generated by TallPDF.NET Evaluation           REDACTED

Return To:
Capital One Home Loans, LLC

7311 W. 132nd Street Ste
300, Overland Park, KS 66213
Prepared By:
Shawna Adams
7311 W. 132nd Street Ste 300
Overland Park, KS 66213

This is to certify that this is a true, full and
correct copy of the original.

By:
Capital One Settlement Services, LLC

——————— [Space Above This Line For Recording Data] ———————

## MORGAGE MIN ⬛⬛⬛⬛7291-1

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated      March 23, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Michael K. Carbone and Janine M. Carbone, His Wife



whose address is 3388 Maplewood Drive South, Wantagh, NY 11793

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026 Flint,
MI 48501-2026, tel. (888) 679 MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." Capital One Home Loans, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
the United States of America      Lender's address is  7311 W. 132nd Street Ste
300, Overland Park, KS 66213

Section ⬛⬛291        Block          Lot ⬛⬛291          Unit

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3033 1/01

⬛⬛-6A(NY) (0308)
Page 1 of 17   Initial                MK 02
VMP Mortgage Solutions, Inc. (8) (515) 7-729

Copy of Mortgage (DOT)

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

REDACTED

(L) "Note." The note signed by Borrower and dated        March 23, 2006       , will be called
the "Note." The Note shows that I owe Lender Four Hundred Sixty Four Thousand and
no/100

                                    Dollars (U.S. $ 464,000.00                    )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by        April 1, 2036

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider        [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] V.A. Rider              [ ] Biweekly Payment Rider   [ ] Other(s) [specify]


(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

7291                    7291              Initials   [signature]              0

A(NY)                                Page 2 of 17                          Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by Tal PDF NET Evaluation      REDACTED

## LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE TOWN OF HEMPSTEAD, CITY OF WANTAGH, COUNTY OF NASSAU, AND STATE OF NEW YORK, TO WIT:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED SITUATE, LYING AND BEING AT WANTAGH, IN THE TOWN OF HEMPSTEAD, COUNTY OF NASSAU AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS AND BY THE LOT NO. 11 BLOCK 219 ON MAP, "MAP OF WANTAGH CENTRE, SITUATED AT WANTAGH, NASSAU COUNTY, NEW YORK, SURVEYED MARCH 1948 BY BALDWIN & CORNELIUS CO INC, C.E.&S.", AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU ON JUNE 23, 1948 AS MAP NO. 4554 WHICH SAID LOT IS MORE PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF BEECH STREET AT THE EXTREME SOUTHERLY END OF THE ARC OF A CURVE CONNECTING THE WESTERLY SIDE OF BEECH STREET WITH THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH (SOUTH MAPLEWOOD DRIVE);

RUNNING THENCE SOUTH 13 DEGREES 11 MINUTES 30 SECONDS WEST ALONG THE WESTERLY SIDE OF BEECH STREET 55 0 FEET;
THENCE NORTH 76 DEGREES 48 MINUTES 30 SECONDS WEST 100 0 FEET;
NORTH 13 DEGREES 11 MINUTES 30 SECONDS EAST 65 0 FEET TO THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH;
THENCE SOUTH 76 DEGREES 48 MINUTES 30 SECONDS EAST ALONG THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH 90 0 FEET TO THE EXTREME WESTERLY END OF THE ARC OF SAID CURVE CONNECTING THE SOUTHERLY SIDE OF SHIEBER ROAD SOUTH WITH THE WESTERLY SIDE OF BEECH STREET; RUNNING THENCE SOUTHERLY ALONG THE ARC OF SAID CURVE BEARING TO THE LEFT HAVING A RADIUS OF 10 FEET A DISTANCE OF 15.71 FEET TO THE EXTREME SOUTHERLY END THEREOF, ON THE WESTERLY SIDE OF BEECH STREET, AT THE POINT OR PLACE OF BEGINNING

TAX ID # 57-219-11

BY FEE SIMPLE DEED FROM CORT RASKOPF AND ELIZABETH RASKOPF, HIS WIFE AS SET FORTH IN DEED BOOK 9563, PAGE 823 AND RECORDED ON 6/27/1984, NASSAU COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation



**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 3388 Maplewood Drive South

                                                 [Street]

Wantagh          [City, Town or Village] New York   11793  [Zip Code]
This Property is in NASSAU               County. It has the following legal
description:
See Attached

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

7291                          7291

-6A(NY) (0305)                        Page 3 of 17            Init de _____              0

                                                                             Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation



(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment to be made by; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows

First, to pay any late charges,

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note

7291      7291      Initials      0

VMP -6A(NY) (0300)      Page 8 of 17      Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation 



If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts that are then required under this Section 3.

7291                                7291              Initials  _____              0

-6A(NY) (0405)                    Page 5 of 17                        Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation



I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

7291                                      7291                                              0

-64(NY) (0305)                           Page 6 of 17                          Form 3033 1/01

Generated by Tal PDF NET Evaluation

REDACTED

that any repairs or restorations are being made. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30 day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6. Borrower's Obligations to Occupy The Property I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

7291      7291      Initials       0

-6A(NY) (0304)      Page 6 of 17      Form 3033 1/01

Click here to unlock Tal PDF NET

Generated by TallPDF.NET Evaluation  REDACTED

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information). Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument, (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations), or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property, (b) securing and/or repairing the Property, (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court, and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan I will pay the premiums for the Mortgage Insurance. If for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



6A(NY) (0308)                    Page 8 of 17                              Form 3033 1/01

Generated by Tal PDF .NET Evaluation



coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.   Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

-----7291                                  -----7291                  Init ials  [signature]                        0

(NY) -6A(NY) (0506)                        Page 10 of 17                                                Form 3033 1/01

Click here to unlock TalPDF.NET

REDACTED

Generated by TallPDF.NET Evaluator

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address. If sent by other means, Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property is sold or transferred without Lender's prior written permission.



7291          772-1                    Ini. Wit. [signature]          0

-6A(NY) (8306)          Page 7 of 7          Form 3033 1/01

Click here to unlock TallPDF.NET



Generated by TallPDF.NET Evaluation

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30 day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during this period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19  Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note, Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

▬▬7291                              ▬▬7291                        ░ ░░              0

▬-6A(NY) (0000)                     Page 13 of 17                              Form 3033 1/01

Generated by Tal PDF NET Evaluation  REDACTED

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21   Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos containing materials if the asbestos and asbestos-containing materials are undisturbed and "non friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

7291.          7729.          Initials _____          0

-6A(NY) (0306)          Page 14 of 17          Form 3033 1/01

Click here to unlock Tal PDF NET

Generated by TallPDF.NET Evaluation

REDACTED

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have, and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for Cost of Improvement (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property (check box as applicable).

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

7291                    291               INITIAL

-6A(NY) (0305)          Page 15 of 17                      Form 3033 1/01

Click here to unlock TallPDF.NET

Generated by TallPDF.NET Evaluation

REDACTED

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____        _____ (Seal)
                                         Michael K. Carbone              Borrower

_____        _____ (Seal)
                                         Joann M. Carbone               Borrower

_____ (Seal)  _____ (Seal)
                         Borrower                                 Borrower

_____ (Seal)  _____ (Seal)
                         Borrower                                 Borrower

_____ (Seal)  _____ (Seal)
                         Borrower                                 Borrower

7291                      7291                              0

-6A(NY) (5305)           Page 16 of 17               Form 3033 1/01

Click here to unlock TallPDF.NET



Generated by TdIPDF NET Evaluation

STATE OF NEW YORK,                    *Nassau*          County ss

On the   23rd   day of   March, 2006        before me, the undersigned, a notary
public in and for said state, personally appeared  Michael K. Carbone and Janine M.
Carbone

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Samantha Roumpas*
Notary Public

Tax Map Information. 57-219-11

SAMANTHA ROUMPAS
NOTARY PUBLIC, State of New York
No. 01RO6131430
Qualified in Nassau County
Commission Expires August 1, 2009

7291                    7291              0

4A(NY) (0304)          Page 17 of 17       Form 3033 1/01

Click here to unlock TaIPDF NET